# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　　Plaintiff,<br><br>vs.<br><br>ANIL MATHUR,<br><br>　　　　　　　　Defendant. | Case No. 2:11-cr-00312-MMD-PAL<br><br>**ORDER AND REPORT OF<br>FINDINGS AND RECOMMENDATION**<br><br>(Mtn to Seal - Dkt. #54)<br>(Mtn to Dismiss - Dkt. #79) |

This matter is before the court on Defendant Anil Mathur's Motion to Seal (Dkt. #54), the government's Response (Dkt. #64), and Mathur's Reply (Dkt. #86); Mathur's Motion to Dismiss Based on Selective and Vindictive Prosecution (Dkt. #79), the government's Response (Dkt. #63), and Mathur's Reply (Dkt. #80).

## BACKGROUND

The grand jury returned an Indictment (Dkt. #1) against Defendant Mathur on August 23, 2011, charging him with nine counts of paying illegal remunerations, in violation of 42 U.S.C. § 1320 a-7b(b)(2)(A). The Indictment alleges Mathur offered kickbacks and bribes to a physician in exchange for referrals of Medicare patients and contains forfeiture allegations. The first forfeiture allegation seeks to recover $6,000.00 in kickbacks or bribes allegedly paid by Mathur between July 30, 2010, and December 7, 2010. The second forfeiture allegation seeks a monetary judgment in the amount of $14,347.68–the amount the government contends Medicare paid for services rendered after March 23, 2010, to Medicare patients referred by the physician receiving kickbacks or bribes.

/ / /

/ / /

**DISCUSSION**

I.   **Mathur's Motion to Seal (Dkt. #54).**

Mathur filed the Motion to Seal, requesting the court allow him to file a dispositive motion under seal. On May 15, 2012, the court entered an Order (Dkt. #79) temporarily granting the Motion to Seal, indicating the proper procedure to follow when seeking to seal a document with leave of court. The court stated it would consider the merits of the Motion to Seal when it issued a decision on the motion to dismiss. On May 16, 2012, Mathur filed the motion to dismiss under seal. Mathur filed a Sealed Appendix (Dkt. #87) and Sealed Reply (Dkt. #86) on May 18, 2012.

Relying on *Kamakana v. City and County of Honolulu,* 447 F.3d 1172, 1178 (9th Cir. 2006), Mathur requests the Motion to Dismiss remain under seal to avoid "further hostility from government officials who may take umbrage at facts and arguments presented." Motion at 3:11-12. Mathur contends that "federal courts permit the sealing of documents to avoid 'public scandal,'" and he believes this, coupled with protecting his right to a fair trial constitute compelling reasons to keep the Motion to dismiss under seal. In response, the government asserts that 28 C.F.R. § 50.9 requires it to oppose the Motion to Seal. However, the court has inherent authority to seal a pleading, and sealing the Motion to dismiss would be "well within the Court's discretion given the scandalous and salacious arguments contained in Mathur's motion to dismiss." Response at 2:5-7. In reply, Mathur reiterates his argument that the Motion to dismiss be sealed to prevent further retaliation against him.

A.   **The Presumption of Public Access**

Unless court records are of the type "traditionally kept secret," the Ninth Circuit recognizes a "strong presumption in favor of access." *Foltz v. State Farm Mutual Auto Insurance Company*, 331 F.3d 1122, 1135 (citing *Hagestad v. Tragesser*, 49 F.3d 1430, 1434 (9th Cir. 1995)). Grand jury transcripts and warrant materials involved in pre-indictment investigations are two categories of documents and records which have "traditionally been kept secret for important policy reasons." *Times Mirror Co. v. United States*, 873 F.2d 1210, 1219 (9th Cir. 1989). Although the federal common law right of access exists, it "does not mandate disclosure in all cases." *San Jose Mercury News, Inc.*, 187 F.3d at 1102. The strong presumption in favor of public access recognized by the Ninth Circuit "can be overcome by sufficiently important countervailing interests." *Id*.

**B.     Materials Submitted with Dispositive Motions.**

The Ninth Circuit comprehensively examined the presumption of public access to judicial files and records in *Kamakana* 447 F.3d 1172. The court held that a showing of "compelling reasons" is needed to support the secrecy of documents attached to dispositive motions. A showing of "good cause" does not, without more, satisfy the "compelling reasons" test required to maintain the secrecy of documents attached to dispositive motions. *Id*. The court found that, "[u]nlike private materials unearthed during discovery, judicial records are public documents almost by definition, and the public is entitled to access by default." *Id*. To justify sealing documents attached to dispositive motions, a party is required to present articulable facts identifying the interests favoring continuing secrecy. *Id.* Unsupported hypothesis or conjecture is insufficient. *See Valley Broadcasting Co. v. United States Dist. Court,* 789 F.2d 1289, 1294 (9th Cir. 1986). The movant must then show that these specific interests overcome the presumption of public access by outweighing the public's interests in understanding the judicial process. *Kamakana,* 447 F.3d at 1181 (internal citations omitted).

Compelling reasons sufficient to outweigh the public's interests in disclosure and justify sealing records exist when court records may be used to gratify private spite, permit public scandal, circulate libelous statements, or release trade secrets. *Id*. at 1179 (internal quotations omitted); *see also Valley Broadcasting*, 789 F.2d at 1294 (recognizing infringement on fair trial rights of a defendant or third persons as "improper use"). Indeed, courts have properly refused "to permit their files to serve as reservoirs of libelous statements for press consumption." *In re McClatchy Newspapers, Inc.*, 288 F.3d 369, 370 (9th Cir. 2002). Although the Ninth Circuit has found "[t]he mere fact that the production of records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation" is insufficient to overcome the right of public access, it has noted that sealing is appropriate where "transmission of reproduced material would result in the great public embarrassment of a third party." *Valley Broadcasting,* 789 F.2d at 1294 n.7 (citing *In re KSTP Television,* 504 F.Supp. 360 (D. Minn. 1980)).

The court finds the Motion to dismiss contains unsubstantiated rumor, gossip, and other scurrilous allegations that may be used to gratify private spite, permit public scandal, and circulate libelous statements. The court finds compelling reasons exist to justify keeping the motion under seal.

Mathur's Motion to Seal (Dkt. #54) is **GRANTED**.  The court will, however, summarize Mathur's contentions without repeating all of the salacious details for the benefit of the public right to access to judicial files and records.  The court will also order that the Appendix (Dkt. #87) of documents supporting the motion, which consists largely of newspaper articles and a publically available report, be filed as part of the public record.

## II. Mathur's Motion to Dismiss Based on Selective and Vindictive Prosecution (Dkt. #79).

### A. Mathur's Motion

To avoid repeating the motion's rumor, innuendo, and gossip, the court will summarize the substance of Mathur's arguments without repeating the salacious details.  Mathur cites two published decisions of the Ninth Circuit from 2005 and 2006 that criticize the United States Attorney's Office ("USAO") in this district for its handling of two cases.  He relates the history of the Bush Administration's removal of U.S. Attorney Daniel Bogden in early 2007, cites materials from a website that reports on the Department of Justice ("DOJ"), and quotes a *New York Times* article questioning why Mr. Bogden was re-nominated as the U.S. Attorney for this district in 2009 by President Obama.  The motion comments on administrative and personnel decisions made in the USAO after Mr. Bogden's departure, making claims "on information and belief."

The motion extolls Mr. Mathur's virtues as a hardworking, entrepreneur who came to the United States from India 37 years ago.  It contains significant biographical detail of Mr. Mathur's life.  Mr. Mathur's involvement in civic affairs increased as he became more successful.  He has contributed to the political campaigns of prominent individuals, including Sheriff Gillispie, Governor Sandoval, Senator Reid, and "several members of the local judiciary."  He became politically active partially through his involvement with the Asian American Group ("AAG").  He engaged in charitable good works, was a routine donor to the AAG, and gained notoriety that caused various civic and government leaders to seek his support.  The head of the AAG has solicited Mr. Mathur to donate money and sponsor various events featuring prominent individuals from the Las Vegas community.

Mathur requests an evidentiary hearing where witnesses can be compelled to testify under oath to show "several other interesting things."  Mr. Mathur was a key financial sponsor of an AAG event in early 2009 at which Mr. Marsh, the head of the USAO Criminal Division was a special guest.  After

Mr. Bogden was re-nominated for U.S. Attorney, Mr. Bogden was also honored by an event held by AAG. Mr. Mathur also made a significant contribution to host this event.

Counsel for Mathur believes that if the court holds a hearing and permits discovery, he can explore which Assistant U.S. Attorneys wanted to replace Mr. Bogden as well as the campaigning they undertook to do so.

Mathur states that in January 2010, the FBI contacted him and notified him that he was a target of a federal investigation. He retained counsel who contacted the U.S. Attorney's Office to discuss the matter. In March 2010, his counsel requested that the USAO recuse itself "due to the various personal contacts and 'appearance' issues implicated." Specifically, counsel refers to the fact that Mr. Marsh and Mr. Bogden had both been at an AAG event and had presumably "consumed his food and drink." This comment is in apparent reference to the fact that Mr. Mathur co- sponsored two AAG events at which Mr. Marsh and another at which Mr. Bogden spoke or were recognized. The USAO declined to recuse. Mr. Mathur was indicted August 23, 2011. "On information and belief," Mr. Marsh approved the indictment.

Mathur argues these facts show that the decision-makers involved in Mathur's indictment "were attending events and presumably consuming his food even though they knew or should have known that he was the subject of a lengthy *3-year FBI investigation*." (emphasis in original). Mathur asserts that he is the subject of a selective prosecution because the USAO treated him more harshly than others. He lists seven examples of civil settlements reached between the DOJ and health care providers between October 2008 and December 2011. In each of these cases, the government permitted physicians and other health care professionals to pay civil fines despite being accused of major frauds on the health care system. He contends that "most normal and reasonable people" would view these settlements as allowing the physicians to "buy their way out" of criminal prosecution.

Additionally, relying on an article from the *New York Times*, Mathur contends the USAO's prosecution of this matter runs counter to the Obama Administration's approach of requiring medical supply companies that pay money or give gifts to doctors to file reports regarding those distributions or risk various monetary civil penalties. Mathur claims the article, which is included in his appendix, shows the Obama Administration has not sought to criminalize this conduct while the local USAO has

1   decided to prosecute Mathur. The government has settled health care fraud allegations against health
2   care professionals, with civil penalties, sometimes totaling millions of dollars, and exercised its
3   prosecutorial discretion not to file criminal charges. Here, however, Mathur is alleged to have paid
4   $26,150.00 to obtain referrals and is facing felony charges.

5   Mathur's counsel believes it is "highly likely" that if Mr. Bogden recused himself, DOJ would
6   have declined prosecution. Thus, the court should "ponder the motives" of the local USAO and should
7   grant an evidentiary hearing to answer Mathur's questions about the motivations of Mr. Bogden and
8   Mr. Marsh. Their discriminatory intent should be explored through discovery, which would be relevant
9   to Mathur's entrapment defense. Mathur asserts the USAO's vindictive attitude is also evidenced by
10  the manner in which he was taken into custody. He was arrested by five FBI agents after offering to
11  self-surrender. A vindictive attitude is also demonstrated by AUSA Pomerantz's statement to defense
12  counsel that Pomerantz was "offended" by Mathur during a pretrial conference and because the
13  government indicted Mathur after he refused to cooperate by wearing a wire to elicit incriminating
14  statements from his physician friends and associates.

15  Mathur's vindictive prosecution claim "arises from the manner in which the government
16  exercised its 'prosecutorial discretion' in indicting him." If the court considers all the facts, including
17  Mr. Bogden's refusal to recuse himself from Mathur's prosecution, the court will conclude there is
18  "some other basis" for the prosecution which is "rooted in animus" toward Mathur.

19  Alternatively, if the court does not dismiss the Indictment, Mathur asserts that he has presented
20  "some evidence" of discriminatory intent to justify discovery concerning selective prosecution. The
21  court should direct the government to produce "all of the civil rights complaints pending in the DOJ
22  involving the USAO for the District of Nevada during Mr. Bogden's tenure," and six other broad
23  categories of materials specified in the motion.

24  **B.     The Government's Opposition.**

25  In response, the government asserts that Mathur has not met his burden of presenting specific
26  facts to establish the existence of selective prosecution. Instead, Mathur relies on gossip, speculation,
27  and unreasonable assumptions. Mathur has not offered any evidence to show that the USAO pursued
28  charges against him based on his political associations or beliefs, race, religion, or ethnicity. He has not

identified an improper motive or other evidence to show selective prosecution. Mathur does not set forth the basis upon which he was purportedly discriminated. The bulk of Mathur's motion, according to the government, is unrelated to his prosecution.

With regard to the press releases cited, Mathur has not identified information about those individuals' political views, race, religion, or ethnicity to determine whether they were similarly situated to Mathur. Additionally, Mathur does not know anything about the strength of evidence, investigation, level of cooperation, or the decision-making process in any of the cases summarized in the press releases. The press releases all relate to cases involving the submission of false claims to government insurers. None suggest that the United States bypassed a criminal kickback prosecution under facts similar to those presented here. Mathur has also failed to establish that any of the civil defendants listed in his motion to dismiss were ever targets of a criminal investigation. Thus, he has no basis for asserting the USAO declined criminal prosecution. Mathur has also not shown whether the defendants in those cases self-disclosed their violations, voluntarily paid restitution, cooperated, or otherwise accepted responsibility for their actions. The government asserts Mathur did none of these things.

The government also argues that Mathur cannot prove his vindictive prosecution claim. A prosecutor violates due process when he or she seeks additional charges solely to punish a defendant for exercising a constitutional or statutory right. In this case, the government indicted Mathur after he refused to accept a plea offer. This does not offend Mathur's due process rights. Relying on *United States v. Lopez,* the government argues that a prosecutor may threaten a defendant with prosecution during an interview or plea negotiations, and if the defendant chooses not to cooperate, the prosecutor may initiate a prosecution. 474 F.3d 1208, 1212 (9th Cir. 2007). This is precisely what happened here. The government repeatedly told Mathur it intended to prosecute him and delayed indicting him several times, at Mathur's request. After Mathur declined to plead guilty and sign a written plea agreement, the government followed through with its decision to indict. The government's opposition attaches correspondence with counsel for Mathur between January 28, 2011, and August 23, 2011, (when the grand jury returned the indictment) to support the government's claims about the chain of events. The government also relies on an August 24, 2011, email exchange in which counsel for the United States

clarified that Mathur was arrested by the FBI on August 24, 2011, based on the United States' position that it had received "misinformation" regarding Mathur's whereabouts, and the government's position was that Mathur had therefore "forfeited his right to self-surrender." None of the government's actions violated Mathur's due process rights.

### C. Mathur's Reply

Mathur replies that in criminal trials, federal judges frequently require the government to provide a neutral reason justifying exclusion of jurors from a potential jury pool based on the exercise of peremptory challenges. He comments that, "[s]adly, prejudice is part of the human condition that arises in people of all races/backgrounds." Counsel for Mathur finds it ironic that the government would take umbrage at being accused of selective and vindictive prosecution when the Attorney General has publicly spoken about the reluctance of Americans to discuss matters of race. The court should recognize the basic principle that prosecutorial power is neither limitless nor wholly unfettered. Discriminatory intent can be shown by either direct or circumstantial evidence. Mathur has shown "some evidence" of discriminatory intent and has met his burden on his selective prosecution claim. Specifically, he has shown a number of instances over a three-year period in which nineteen separate individuals were permitted to pay civil fines and escape prosecution. On the other hand, Mr. Mathur is ethnically, religiously, and socioeconomically different from each of the nineteen individuals and has met his burden of showing that he was similarly situated but treated differently and more harshly.

Mathur contends that it is the government's duty to identify the race, religion, and ethnicity of the people named in the press releases supporting his motion once he has alleged that he was treated differently because of his ethnicity (South Asian from India) and religion (Hindu). Mathur reiterates that at a minimum, he is entitled to discovery to develop his claim. He requests an evidentiary hearing to demonstrate the "impermissible bias which permeates the USAO." Reply at 5:16-17. Alternatively, if the court is not inclined to dismiss the indictment, it should permit all of the information in the motion to dismiss and reply to be admitted at trial because the relationships discussed form an integral part of Mathur's defense.

///
///

## III. Applicable Law & Analysis.

### A. Prosecutorial Discretion.

In *United States v. Armstrong*, the Supreme Court cited a long line of precedent holding the Attorney General and the United States Attorney have broad discretion to enforce federal criminal laws. 517 U.S. 456, 463 (1996). A presumption of regularity supports prosecutorial decisions and, "in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties." *Id.* at 464 (citing *United States v. Chemical Foundation, Inc.,* 272 U.S. 1, 14-15 (1926). It is well-established that as long as a prosecutor has probable cause to believe the accused violated the law, the decision whether or not to prosecute and what charge to bring before a grand jury generally rests entirely in the discretion of the prosecutor. *Armstrong*, 517 U.S. at 464 (citing *Bordenkircher v. Hayes,* 434 U.S. 357, 364 (1978)).

The broad discretion afforded prosecutors is based largely on the recognition that the decision to prosecute is particularly ill-suited to judicial review. *Wayte v. United States*, 470 U.S. 598, 607 (1985). Factors such as the strength of the case, the prosecution's general deterrence value, the government's enforcement priorities, and the case's relationship to the government's overall enforcement plan are not readily susceptible to the kind of analysis the courts are competent to undertake. *Id*. Judicial supervision of prosecutorial discretion "entails systematic cause for particular concern." *Id*. Courts' examination of the basis of the prosecution delays the criminal proceeding, threatens to chill law enforcement by subjecting the prosecutor's motives and decision-making to outside inquiry, and may undermine prosecutorial effectiveness by revealing the government's enforcement policy. *Id*. For these reasons, the Supreme Court has cautioned lower courts to be hesitant to examine the decision whether to prosecute. *Id*.

Notwithstanding the prosecutor's broad discretion and the presumption of regularity supporting prosecutorial decisions, the Due Process Clause of the Fifth Amendment prohibits a prosecutor from vindictively prosecuting a defendant for the defendant's exercise of a statutory, procedural, or other protected right. *Blackledge v. Perry,* 417 U.S. 21, 27 (1974). Additionally, the Equal Protection Clause of the Fifth Amendment prohibits the government from selectively prosecuting an individual on the basis of race, ethnicity, or religion. *See Wayte,* 470 U.S. at 608. However, the Supreme Court has held

that "exceptionally clear proof" is required before a court may infer an abuse of prosecutorial discretion. *McCleskey v. Kemp*, 481 U.S. 279, 297 (1987). Because courts ordinarily presume that public officials have properly discharged their official duties, a defendant who contends that a prosecutor made a charging decision in violation of the defendant's constitutional rights has a demanding standard of proof. *Nunes v. Ramirez-Palmer,* 485 F.3d 432, 441 (9th Cir. 2007) (internal citations omitted).

### B. Selective Prosecution.

In *Wayte*, the Supreme Court held that in order to demonstrate selective prosecution, a defendant must show that (a) he received disparate treatment; and (b) the prosecution was improperly motivated by a discriminatory purpose. 470 U.S. at 608-10. There, the defendant was prosecuted, along with others, for failing to register for the draft. A Presidential Proclamation required young males to register with the Selective Services System during a specified week. The defendant was one of the persons required to register. Instead of doing so, he wrote letters to government officials, including the President, stating he had not registered and did not intend to do so. These letters were added to a Selective Service file of young men who advised they had failed to register or who were reported by others as having failed to register. The Selective Service adopted a policy of passive enforcement under which it only investigated and prosecuted non-registration cases of people who self-reported their failure to register, or who were reported by others.

As part of its passive enforcement policy, the Selective Service sent a letter to each nonregistrant, warning that a failure to register could result in criminal prosecution. The defendant received such a letter, but he did not respond. The Selective Service provided his name to the DOJ for investigation and potential prosecution along with others identified in the passive enforcement process. After additional government efforts to persuade nonregistrants to change their mind, the defendant and others were prosecuted. The defendant moved to dismiss the indictment on the selective prosecution grounds. He contended that he and other indicted non-registrants were vocal opponents of the registration program and were impermissively targeted out of an estimated 674,000 non-registrants for prosecution because they exercised their First Amendment rights.

The Supreme Court accepted certiori to resolve the circuit split on the issue of selective prosecution. It reaffirmed that selective prosecution claims require a defendant to establish that his

prosecution has a discriminatory effect and that it was motivated by discriminatory purpose. *Id*, at 608. The Court found the defendant had shown that the prosecuted individuals reported themselves as having violated the law. However, he had not shown the enforcement policy selected non-registrants for prosecution on the basis of their speech. The government had a so-called "beg" policy in which it tried to persuade nonregistrants to change their mind and register. If they did so, they were not prosecuted. Additionally, the government did not even investigate those who wrote letters to Selective Service criticizing the draft unless their letters affirmatively stated they had refused to comply with the law. The government also prosecuted people who reported themselves or who were reported by others, but who did not publicly protest the law. The Supreme Court found that these facts demonstrated that the government treated all reported non-registrants similarly and did not subject vocal non-registrants to any special burden finding "those prosecuted in effect selected themselves for prosecution by refusing to register after being reported and warned by the Government." *Id,* at 610.

The Supreme Court also found that even if the Selective Service's passive enforcement policy had a discriminatory effect, the defendant had not shown that the government intended such a result. *Id.* The evidence demonstrated that the government was aware that its passive enforcement policy would result in prosecution of vocal objectors, and the objectors would probably make selective prosecution claims. *Id.* However, the Supreme Court reiterated that a discriminatory purpose implies that the decision maker took a particular course of action at least in part "because of" and not merely "in spite of" its adverse effects upon an identifiable group. *Id*. (citing *Personnel Administrator of Massachusetts v. Feeney,* 442 U.S. 256, 279 (1979)). Because the defendant had not shown the government prosecuted him because of his protest activities, his selective prosecution claim failed.

Thus, to establish a successful selective prosecution claim, a defendant must demonstrate that: (1) other similarly situated individuals have not been prosecuted, and (2) his prosecution was based on an impermissible motive. *United States v. Sutcliffe,* 505 F.3d 944, 954 (9th Cir. 2007). Because courts presume the government undertakes a prosecution in good faith, a defendant challenging an indictment on selective prosecution grounds bears a "heavy burden" of proving facts sufficient to satisfy these two requirements. *See, e.g., Reno v. Am.-Arab Anti-Discrimination Comm.,* 525 U.S. 471, 489 (1999) (stating a selective prosecution claim is a *rara avis* [rare bird], and the standard for proving selective

prosecution is demanding and requires a defendant to introduce clear evidence to overcome the presumption that a prosecutor has acted lawfully).

In *Armstrong,* the Supreme Court considered what a defendant must show to obtain discovery on a race-based selective prosecution claim. The court held that Fed.R.Crim.P. 16(a)(1)(C) "authorizes defendants to examine government documents material to the preparation of their defense against the government's case in chief, but not to the preparation of selective prosecution claims." 517 U.S. 456, 463. A selective prosecution claim is not a defense to the merits. *Id*. Rather, it is a claim the government has brought the charges for unconstitutional reasons. *Id*. "A selective-prosecution claim asks the court to exercise judicial power over a 'special province' of the Executive." *Id*. at 464. To prevail on a selective prosecution claim, a defendant must show that the prosecutorial policy both had a discriminatory effect and was motivated by a discriminatory purpose. *Id*. at 465. To establish a discriminatory effect, a defendant must prove that similarly situated individuals of a different race, religion, national origin, etc. were not prosecuted. *Id*. at 467. A discriminatory effect is not, however, enough to establish a selective prosecution claim. In addition, a defendant must also show that the decision makers in his case acted with a discriminatory purpose. *Id*. at 465.

Here, Mathur has not satisfied either prong of this test. The government retains broad prosecutorial discretion, and the Supreme Court has made it clear that the discretionary decision of prosecutors are "particularly ill-suited for judicial review." *Wayte*, 470 U.S. at 607. A presumption of regularity applies, and in the absence of clear evidence to the contrary, courts presume that prosecutors have properly discharged their official duties. *Armstrong*, 517 U.S. at 463. The decision to prosecute is not unlimited. It may not be based on an unjustifiable reasons such as race, religion, or other arbitrary classification. Here, there is not a scintilla of evidence before the court that the decision to prosecute Mathur was based on his race, religion, or other arbitrary classification in violation of Mathur's Fifth Amendment due process rights. He has not demonstrated that the government has prosecuted a particular class of people in a manner that is so unequal and oppressive that it amounts to a practical denial of equal protection of the law. He has not shown any evidence that the USAO's decision to prosecute him had both a discriminatory effect and was motivated by a discriminatory purpose. His motion did not even identify the suspect classification on which the allegedly discriminatory conduct

was based. It was not until his reply brief that he asserted he was being selectively prosecuted because of his South Asian/Indian descent and his Hindu religion.

Additionally, Mathur has not established he is entitled to discovery or an evidentiary hearing. He has presented no colorable evidence that he was selected for prosecution because of his race, religion, national origin, or other constitutionally suspect classification. His motion essentially asks the court to speculate about the motives of the USAO prosecuting him, and to grant an evidentiary hearing to explore office gossip and answer rhetorical questions about the motives of individuals within the USAO. As the Supreme Court made clear in *Armstrong*, the showing necessary to obtain discovery in support of a selective prosecution claim is demanding and rigorous.

Mathur argues that federal courts require prosecutors to provide neutral reasons for the exercise of their peremptory challenges routinely. Thus, he suggests that cases such as *Batson v. Kentucky*, 476 U.S. 79 (1986), require the government to provide a neutral, non-discriminatory reason for selecting him for prosecution. The Supreme Court considered this argument at length and rejected it in *Armstrong*. The court pointed out that, in making a *Batson* challenge, the defendant is required to show that the prosecutor has exercised peremptory challenges to remove members of the defendant's race from the panel. Jury selection takes place in front of the trial judge, who is well-situated to detect whether a peremptory challenge to a prospective juror is part of a pattern of singling out members of a certain race. The trial judge is in a position to determine whether a challenge to a prospective juror has evidentiary significance, and the significance may differ depending on the racial make up of the panel. If it appears to the trial judge that the prosecutor may be exercising challenges improperly, the prosecutor mus provide the court with a justification for the exercise of a peremptory challenge. To rule on a *Batson* challenge, the trial judge does not review prosecutorial conduct in all other panels in all other cases. In short, the Supreme Court considered and rejected the argument that *Batson* and its progeny place the burden on the prosecutor to show a neutral, non-discriminatory reason for discretionary decisions to prosecute. It is the defendant's burden to make the required threshold showing of different treatment of similarly situated persons. Mathur has not met this heavy burden.

///
///

### C. Vindictive Prosecution.

The government violated Mathur's right to due process of law if it filed charges against him to penalize him for exercising a protected statutory or constitutional right. *See United States v. Goodwin*, 457 U.S. 368, 372 (1982). In *Bordenkircher v. Hays*, 434 U.S. 357 (1978), the Supreme Court considered whether the Due Process Clause of the Fourteenth Amendment is violated when a prosecutor threatens to re-indict a defendant on more serious charges if he does not plead guilty to the original offense. The Court observed that guilty pleas and plea bargaining are important components of this country's criminal justice system. *Id*. at 362. Plea bargaining is mutually advantageous to defendants and prosecutors, who each have their own reasons for wanting to avoid trial. *Id*. at 363. The Court acknowledged that confronting a defendant with the risk of more severe punishment if he rejected a plea offer may discourage a defendant's assertion of his right to trial. However, the Court found that these difficult choices are an inevitable and permissible "attribute of any legitimate system which tolerates and encourages the negotiation of pleas." *Id*. at 364 (internal citations omitted). The Court therefore held that the prosecutor did not violate the Due Process Clause of the Fourteenth Amendment by openly presenting the defendant with the unpleasant alternatives of pleading guilty to the offense charged with the recommendation of a sentence of five years, or facing an indictment under state law as a habitual criminal.

To establish a prima facie case of prosecutorial vindictiveness, "a defendant must show either direct evidence of actual vindictiveness or facts that warrant an appearance of such." *United States v. Lopez*, 474 F.3d 1208, 1211 (9th Cir. 2007). A defendant may establish prosecutorial vindictiveness by producing direct evidence of the prosecutor's punitive motivation toward him. *United States v. Jenkins*, 504 F.3d 694, 699 (9th Cir. 2007). Alternatively, a defendant is entitled to a presumption of vindictiveness if he can show that charges were filed because he exercised a statutory, procedural, or constitutional right in circumstances that give rise to an appearance of vindictiveness. *Id.* "[T]he appearance of vindictiveness results only where, as a practical matter, there is a realistic or reasonable likelihood of prosecutorial conduct that would not have occurred but for hostility or a punitive animus towards the defendant because he has exercised his specific legal rights." *Id.* at 700. A defendant must prove an improper prosecutorial motive through objective evidence before any presumption of

vindictiveness attaches. *United States v. Montoya*, 45 F.3d 1286, 1299 (citing *Goodwin*, 457 U.S. at 380 n.12).

Once a presumption of vindictiveness arises, the burden shifts to the prosecution to show that "independent reasons or intervening circumstances dispel the appearance of vindictiveness and justify its decisions." *United States v. Hooton,* 662 F.2d 628, 634 (9th Cir. 1981), *cert. denied*, 455 U.S. 1004 (1982); *see also Blackledge*, 417 U.S. at 29 n.7; *Garza-Juarez,* 992 F.2d at 906; *United States v. Ruesga-Martinez,* 534 F.2d 1367, 1369-70 (9th Cir. 1976).

Although the mere filing of an indictment can support a charge of vindictive prosecution, most vindictive prosecution cases involve re-indictment of a defendant. *Montoya*, 45 F.3d at 1299. Vindictiveness claims are evaluated differently when charges are added during pretrial proceedings, particularly during plea negotiations, than when they are added during or after trial *United States v. Gastelum-Almeida*, 298 F.3d 1167, 1172 (9th Cir. 2002). During pretrial negotiations, "vindictiveness will not be presumed simply from the fact that a more severe charge followed on, or even resulted from, the defendant's exercise of a right." *United States v. Gamez-Orduno*, 235 F.3d 453, 462 (9th Cir. 2000). Prosecutors often threaten to bring increased charges if a defendant does not plead guilty and make good on these threats. *Id*. at 463. These actions are merely part of plea negotiations and do not violate due process. *Id.*

In this case, Mathur's vindictive prosecution claim is based on arguments that: (1) Mr. Bogden refused to recuse himself from Mathur's prosecution; (2) Mathur was arrested by five FBI agents after offering to self-surrender; (3) AUSA Pomerantz stated to defense counsel that Pomerantz was "offended" by Mathur doing a pretrial conference; (4) Pomerantz sought an indictment after Mathur refused to cooperate with the government by wearing a wire and surreptitiously recording conversations. The court finds Mathur has not established a prima facie case of prosecutorial vindictiveness. He has not shown either direct evidence of actual vindictiveness or facts that warrant an appearance of vindictiveness. The documents submitted with his motion show that Mr. Bogden was a speaker at a July 7, 2010, AAG function whose publicized purpose was "an Asian-American event to meet law enforcement and introducing: new FBI Special Agent in Charge Kevin Favereu, and new U.S. Attorney Dan Bogden." Mr. Bogden was a speaker along with Catherine Cortez, Attorney General of

the State of Nevada; David Roger, Clark County District Attorney; Clark County Sheriff Douglas Gillispie; and Special Agent In Charge, Kevin Favereu. Fifteen other guests who were members of the Nevada judiciary, and ten additional special guests, including Mather's defense counsel, Mr. Padda, were also recognized in program materials. The fact that Mr. Bogden was one of many speakers at this function is not a sufficient reason to disqualify his office from this prosecution, and does not suggest that the USAO acted vindictively in seeking this indictment because he was asked to recuse.

The written correspondence attached to the government's Response establishes that the government informed Mathur it intended to prosecute him and held off on indicting Mathur several times at his request. When Mathur declined to plead guilty and enter into a plea agreement, the government indicted him. "A prosecutor may threaten a defendant with prosecution during an interview or plea negotiations, and if that defendant chooses not to cooperate or plead guilty, the prosecutor is free to initiate a prosecution." *Lopez*, 474 F.3d at 1212. Mathur has not presented direct evidence of punitive motivation toward him, and no presumption of vindictiveness applies. Rather, the prosecutor followed through with threats to indict Mathur when Mathur refused to cooperate and sign a written plea agreement. Accordingly, Mathur's motion to dismiss based on vindictive prosecution should be denied.

Finally, Mathur requests that if the court does not grant his motion to dismiss, it should permit all of the information discussed in his motion and reply to be admitted at trial. Mathur has not met his threshold burden of showing entitlement to discovery or an evidentiary hearing, let alone that all of the "information" discussed in his motion is admissible at trial. As a general rule, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy, and potential prejudice may be resolved in their proper context. *See, e.g.*, *Hawthorne Partners v. AT&T Tech, Inc.*, 831 F.Supp. 1398, 1400 (N.D. Ill. 1993).

For all of the foregoing reasons,

**IT IS ORDERED** that:

1. Mathur's Motion to Seal (Dkt. #54) is GRANTED.

2. Mathur shall file the Appendix to the motion in the public record.

///

**IT IS RECOMMENDED** that Mathur's Motion to Dismiss (Dkt. #79) be DENIED.

Dated this 8th day of June, 2012.

_____
PEGGY A. LEEN
UNITED STATES MAGISTRATE JUDGE