# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | Case No. 2:11-cr-00312-MMD-PAL |
| Plaintiff, ) | |
| ) | **REPORT OF FINDINGS AND** |
| vs. ) | **RECOMMENDATION** |
| ) | |
| ANIL K. MATHUR, ) | (Mtn to Dismiss - Dkt. #50) |
| ) | |
| Defendant. ) | |

This matter is before the court on Defendant Anil K. Mathur's Motion to Dismiss the Indictment Based Upon Destruction of Exculpatory Evidence or Alternative Relief (Dkt. #50), which was referred to the undersigned for findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4. The Court has considered the Motion, the government's Response (Dkt. #61), and Mathur's Reply (Dkt. #71).

## BACKGROUND

The grand jury returned an Indictment (Dkt. #1) against Defendant Mathur on August 23, 2011, charging him with nine counts of paying illegal remunerations, in violation of 42 U.S.C. § 1320 a-7b(b)(2)(A). The Indictment alleges Mathur offered kickbacks and bribes to a physician in exchange for referrals of Medicare patients and contains forfeiture allegations. The first forfeiture allegation seeks to recover $6,000.00 in kickbacks or bribes allegedly paid by Mathur between July 30, 2010, and December 7, 2010. The second forfeiture allegation seeks a monetary judgment in the amount of $14,347.68–the amount the government contends Medicare paid for services rendered after March 23, 2010, to Medicare patients referred by the physician receiving kickbacks or bribes.

The government's key witness in this case is the physician to whom Mathur allegedly paid the kickbacks. This physician reported Mathur's conduct to Federal Bureau of Investigation ("FBI"), and

agreed to work as a confidential human source. He recorded conversations with Mathur over the course of the FBI's investigation of Mathur. Government counsel provided counsel for Mathur with discovery, including a recorded call from the physician to Mathur on July 28, 2010. In that recording, the physician states, "Good, I just finished the office, I see you left me a little message, what's Cigna or Aetna doing? What do they want to do now?" Motion at 3:3-4. On "information and belief," Mathur contends the "little message" referred to in the recording provided by the government in discovery was a voicemail message left by Mathur for the physician.

On February 17, 2012, defense counsel requested a copy of the recorded voicemail message he believes he left the physician from the government. Government counsel advised the FBI of Mathur's request, and the FBI investigated and prepared a report, which is attached to the Motion as Exhibit A. The report indicates that FBI Special Agent Aida Reyes contacted the physician on February 27, 2012, and described the July 28, 2010, phone call recording. The physician reported to Special Agent Reyes that the physician believed Mathur left a verbal message with the physician's administrative staff requesting the physician call Mathur about Cigna or Aetna, and the message was verbally relayed to the physician by a staff member.

## **DISCUSSION**

### A.     The Parties' Positions.

Mathur seeks an order dismissing the Indictment, asserting that the government's alleged destruction of exculpatory evidence amounts to a due process violation under the Fifth Amendment. Alternatively, he asks the court either exclude all statements by the physician at trial or give an "appropriate jury instruction." Motion at 2:6-7. Mathur contends the "little message" is significant because if it contained "any expression by Mr. Mathur relating to private insurance being better for his business," this would undercut the government's theory of the case. Motion at 5:6-7. Mathur contends "on information and belief" that the little message was a voicemail message. *Id.* at 5: 8-10. Because the FBI's investigation of the little message revealed it was likely a verbal message, Mathur contends factual issue exists that must be resolved at an evidentiary hearing where the physician "can be vigorously cross-examined by defense counsel." Motion at 8:1-2. He asserts that it is "logical to assume" that the physician–acting in his capacity as the government's agent–purposefully destroyed the

message because of its exculpatory nature. *Id.* at 10:8. He requests an evidentiary hearing so that the court may assess the physician's credibility about whether the "little message" was a recorded voicemail that he destroyed, or whether it was a verbal message relayed by a staff member as the physician claims.

The government responds that Mathur has not established that any voicemail message existed, that it was exculpatory, or that it was destroyed by the physician. The government does not dispute that the physician acted as the government's agent. However, it asserts dismissal or exclusion sanctions are not warranted because Mathur is aware of the contents of the message. Mathur has not cited any support for his request that the Indictment be dismissed. At most, he has highlighted an issue of fact for the jury at trial. Mathur has not shown prejudice, and sanctions are inappropriate.

In an untimely reply,[1] Mathur asserts he has shown the message existed because the physician refers to it in a later recorded conversation. He argues that the court cannot determine whether Mathur suffered prejudice without an evidentiary hearing because only thorough cross-examination of the physician will permit him to demonstrate prejudice.

**B.    Analysis.**

    **1.    Mathur's Request for an Evidentiary Hearing.**

In *United States v. Howell*, the Ninth Circuit held a court must hold evidentiary hearing if the moving papers allege facts with sufficient definiteness, clarity, and specificity to enable the court to conclude that relief must be granted if the facts alleged are proved. *See* 231 F.3d 615, 620 (9th Cir. 2000) (citing *United States v. Walczak*, 783 F.2d 852, 857 (9th Cir. 1986); *United States v. Irwin*, 613 F.2d 1182, 1187 (9th Cir. 1980); *United States v. Carrion*, 463 F.2d 704, 706 (9th Cir. 1972). The court need not hold a hearing on defendant's pre-trial motion "merely because a defendant wants one. Rather, the defendant must demonstrate that a significant disputed factual issue exists such that a hearing is required." *Howell*, 231 F.3d at 621 (internal citation omitted). The determination of whether

---

[1] In an Order (Dkt. #66) entered April 16, 2012, the court granted Mathur an extension of time to file a reply to the government's Response (Dkt. #61) no later than April 16, 2012. Mathur filed the Reply (Dkt. #71) on April 20, 2012.

an evidentiary hearing is appropriate rests in the reasoned discretion of the district court. *United States v. Santora*, 600 F.2d 1317, 1320 (9th Cir.), *amended by* 609 F.2d 433 (1979).

The Motion does not demonstrate the existence of a significant disputed factual issue that requires an evidentiary hearing. The discovery the government provided contains a recorded phone conversation between Mathur and the physician which refers to an earlier message Mathur left the physician. Mathur asked the government for a copy of the voicemail recording he thinks he left "on information and belief." The government investigated by asking the physician about it. The physician's recollection is that the message left by Mathur was verbally relayed to him by a staff member. Mathur has not provided an affidavit or made an offer of proof that the voicemail ever existed; he merely asserts, in conclusory fashion, that "on information and belief," he left the physician a voicemail. Similarly, he has not provided an affidavit or made an offer of proof about the contents of the message. In fact, it is clear from the Motion that he is speculating the message might have concerned something exculpatory, not that it actually did. Mathur argues that the message "is significant *insofar as* any expression by Mr. Mathur relating to private insurance being better for his business and the type of business he would prefer *would*" undercut the government's theory of this case. Motion at 5:5-8 (emphasis added).

Mathur's conjecture that the message may have been left on voicemail and recorded and destroyed by the physician is insufficient to establish a disputed issue of fact warranting an evidentiary hearing. The Motion states, "Believing something is not the same as knowing it to be true," in referring to the physician's recollection. Motion at 5:8-9; 7:15. The same is true for Mathur. Mathur has not presented "sufficiently definite, specific, detailed, and nonconjectural" evidence to show there are contested issues of fact regarding the government's duty to preserve. *United States v. DiCesare,* 765 F.2d 890, 896 (9th Cir.), *amended by* 777 F.2d 543 (9th Cir. 1985) (internal citation omitted); *see also United States v. Moran-Garcia*, 783 F.Supp.2d 1266, 1268-69 (S.D. Cal. 1991) ("the Constitution does not require an evidentiary hearing when no affidavit or declaration has been provided to the Court to place facts in issue").

Mathur also asserts the court should hold an evidentiary hearing to determine whether the physician's recollection about the little message is credible and so that he can vigorously cross-examine

the physician.  Mathur is not entitled to an evidentiary hearing to obtain discovery, or to see how the government's witness will fare on cross-examination.  The jury will determine the credibility of the physician at trial.  *See United States v. Ortiz*, 362 F.3d 1274, 1279 (9th Cir. 2004) (determining whether witness has testified truthfully "is entirely for the jury to determine").  Accordingly, the court will decide the Motion on the parties' papers.

### 2. The Government's Duty to Preserve the Little Message.

As a general rule, when the government fails to disclose material exculpatory evidence, a due process violation occurs, irrespective of the good or bad faith of the government.  *See Illinois v. Fisher*, 540 U.S. 544, 547 (2004) (citing *Brady v. Maryland,* 373 U.S. 83 (1963).  A different standard applies, however, to evidence that is only potentially exculpatory.   Where potentially exculpatory evidence is not preserved, "courts face the treacherous task of divining the import of matters whose contents are unknown and, very often, disputed."  *California v. Trombetta,* 467 U.S. 479, 488 (1984).  In *Trombetta,* the defendants[2] alleged police violated their due process rights by destroying breath samples it used to test defendants' blood alcohol levels.  *Id.* at 480.  The samples were destroyed pursuant to police department policy, and defendants asserted they would have used the samples to impeach the incriminating test results.  *Id.* at 484.

Citing *United States v. Agurs,* the Supreme Court observed that the government's duty to preserve is limited to evidence that might be expected to play a "significant role" in a suspect's defense.  *Id.* at 488 (1984) (footnote omitted) (citing 427 U.S. 97, 109-10 (1963)).  Thus, the government has a duty to preserve material evidence–that is, evidence (a) with an exculpatory value that was apparent before it was destroyed and (b) that cannot be comparably replaced by other reasonably available means.  *Id.* at 489.  The *Trombetta* Court found that the police's destruction of the breath samples did not violate the defendants' due process rights because the officers acted "in good faith and in accord with their normal practice."  *Id.* at 488 (citing *Killian v. United States*, 368 U.S 231, 242 (1961)).  The

---

[2]*Trombetta* was a consolidated case involving the due process claims of two groups: (a) criminal defendants who filed motions to suppress evidence from intoxilyzer breath tests in municipal court cases; and (b) convicted defendants who challenged their convictions through habeas corpus proceedings.

Court observed that the breath samples were likely inculpatory. Even assuming they were potentially exculpatory, the Court reasoned that the defendants could elicit comparable evidence of the breath test's unreliability by other means, for example, through testimony from officers who administered the test. *Id.* at 492.

Subsequently, in *Arizona v. Youngblood,* the Supreme Court recognized that due process requires a different result when the government fails to preserve evidence "of which no more can be said than it could have been subjected to tests, the results of which might have exonerated the defendant." 488 U.S. 51, 58 (1988). In *Youngblood*, the defendant alleged police violated his due process rights by failing to refrigerate a sexual assault victim's clothing containing semen samples during the six weeks between the crime and defendant's arrest. The Court concluded that the police's failure to preserve such "potentially useful evidence" does not constitute a denial of due process "unless a criminal defendant can show bad faith on the part of the police." *Id.* The Court reasoned that the police's failure to refrigerate was not concealed from defendant, and defendant's expert was permitted to examine and test the damaged evidence. Additionally, there was no suggestion of bad faith on the part of the police, and therefore, no due process violation occurred.

Most recently, in *Illinois v. Fisher,* the Supreme Court reaffirmed that failure to preserve potentially useful evidence does not constitute a denial of due process unless a defendant can show the police acted in bad faith. There, the defendant was charged with possession of cocaine. He filed a motion for discovery requesting all physical evidence the State of Illinois intended to use at trial. The State responded that it would make the evidence available at a reasonable time and place. The defendant was released on bond, absconded, and was a fugitive for ten years. When he was apprehended, he filed a motion to dismiss because the police had destroyed the substance seized from him at the time of his arrest in accordance with established procedures. The trial court denied the motion, and the defendant was convicted. On appeal, he argued that his conviction should be overturned, and the charges dismissed, because destruction of the substance violated his due process rights. The Illinois Supreme Court reversed, holding that where evidence is requested by the defense, it must be preserved, and a due process violation occurs if the evidence is destroyed. The Illinois Supreme Court also held that in these circumstances, a defendant need not show that the destroyed

evidence had exculpatory value to establish a due process violation, and dismissal was appropriate even if the destruction was inadvertent, and there was no bad faith on the part of the State.

The Supreme Court reversed the Illinois Supreme Court, reaffirming prior precedents which held that the failure to preserve potentially useful information does not violate due process "*unless a defendant can show bad faith on the part of the police.*"  540 U.S. at 547-48 (emphasis in original). The high Court recognized that the destroyed physical evidence was potentially useful evidence to the defendant because he could hope testing of it would exonerate him.  However, the defendant did not allege or show that the police acted in bad faith when they destroyed it.  The Court rejected the reasoning of the Illinois Supreme Court that the existence of a pending discovery request eliminates the requirement that a defendant show bad faith on the part of the police.  The Supreme Court emphasized that the reason it adopted the bad faith requirement in the first place was to limit the extent of the police's obligation to preserve evidence and "confine it to that class of cases that where the interests of justice most clearly require it." *Id.* at 548 (internal citation and marks omitted).  At best, the destroyed evidence might have given the defendant an opportunity to show the police testing was inaccurate. Because the destroyed evidence was only potentially useful, and defendant did not show the police acted in bad faith, no due process violation occurred.

Here, as a threshold matter, the court finds that Mathur has not established the existence of a recording of the "little message." His Motion does not claim to know content of the message, and therefore, whether it was material, exculpatory, potentially exculpatory, or potentially useful. He speculates that if it was recorded, it was destroyed by the physician because the physician recognized it was exculpatory to Mathur. As Mathur himself acknowledges, "Believing something is not the same as knowing it to be true." Motion at 7:15. Additionally, Mathur cites no case law to support his request for the alternative relief of either excluding the physician's testimony or providing an "appropriate instruction" to the jury. Mathur has not shown the message existed, established the content of the message, or cited any law to support his request for sanctions.

However, assuming arguendo that there was a voicemail recording of the message that the physician failed to preserve or erased, Mathur's due process rights were not violated by destruction of the message. At best, the message was potentially exculpatory or potentially useful evidence. Mathur

has not established that the message was recorded, let alone that it was destroyed in bad faith. Additionally, *Trombetta* governs, and Mathur's due process claim fails because he can obtain comparable evidence by other reasonably available means.  First, Mathur's Motion cites three specific examples of comparable evidence: (a) a recorded conversation from March 15, 2010, in which Mathur expresses his concern with the financial state of Medicare and Medicaid, "clearly suggesting this was *not* business he was particularly interested in;" (b) a recorded conversation from November 2009, which shows Mathur "does not sound like a man eager for Medicare/Medicaid business;" and (c) a recorded conversation from July 28, 2010, in which the physician refers to Mathur's message.  Motion at 4:12-14; Motion at 5:3-5 & n.5.  Second, Mathur could call the physician as a witness to testify about the contents of the message.  Third, Mathur himself left the message, and he is aware of its contents. He can testify, if he chooses, about what the message said.

For all of these reasons, Mathur has not shown a due process violation occurred, and the court will recommend that the Motion to Dismiss (Dkt. #51) be denied.

Accordingly,

**IT IS RECOMMENDED** that Mathur's Motion to Dismiss Based on Destruction of Evidence (Dkt. #50) be DENIED.

Dated this 29th day of June, 2012.

_____
PEGGY A. LEEN
UNITED STATES MAGISTRATE JUDGE