1

2

3

4

5

6                           UNITED STATES DISTRICT COURT

7                                  DISTRICT OF NEVADA

8                                          * * *

9    UNITED STATES OF AMERICA,            Case No. 2:11-cr-00312-MMD-PAL

10                          Plaintiff,
                                                        ORDER
11         v.
                                          (Defendant's Objection to the Magistrate
12   ANIL MATHUR,                         Judge's Order and Report and
                                          Recommendation – Dkt. no. 101)
13                         Defendant.
                                          (Motion to Seal – Dkt. no. 102)
14

15         Before the Court is Defendant Anil Mathur's Objection ("Objection") to the

16   Magistrate Judge's Order and Report and Recommendation ("R&R").  (Dkt. no. 101.)

17   For the reasons stated below, the Court accepts and adopts the Magistrate's R&R in full.

18   The Court further withdraws its previous temporary order to seal Defendant's Objection

19   and denies the government's Motion to Seal (dkt. no. 102).

20   I.    BACKGROUND

21         Because the Order and Report and Recommendation (dkt. no. 95) contains a

22   detailed account of the facts in this case, this Order only briefly recounts the pertinent

23   facts.

24         Defendant Mathur was indicted on August 23, 2011, for nine counts of paying

25   illegal remunerations in violation of 42 U.S.C. § 1320a-7(b)(2)(A) ("The Anti-Kickback

26   Act").   The government alleges that Mathur, a medical supplies provider, offered

27   kickbacks and bribes to an undercover physician-informant in exchange for Medicare

28   patient referrals.

Mathur is a 70-year-old Indian American who moved to the United States from India 37 years ago.  He runs United Medical Supplies, a pulmonary medical services and supply company.  Mathur is actively involved in the Clark County community, especially with the Asian American Group ("AAG").

The government investigated Mathur for three years.  In January 2011, the United States Attorney's Office ("USAO") sent Mathur a letter informing him that he was the target of an FBI investigation.  During the course of plea negotiations, Mathur's attorney asked the Nevada USAO (twice) to recuse itself because of Mathur's previous political support for the Nevada US Attorney and because over the years Mathur had numerous interactions with certain persons at the USAO through his civic engagements.  After the EOUSA Office of General Counsel's vetting of Mathur's requests, the USAO declined to recuse itself.

The USAO offered Mathur a plea agreement whereby Mathur would wear a recording device and tape conversations of his physician friends for the government.  Mathur alleges that the USAO knew that many of these friends were of Indian and Filipino nationality.  Mathur declined the plea agreement.  On August 23, 2011, the grand jury returned the Indictment against Mathur.  Agents with the FBI arrested Mathur the next day.

Mathur filed a Motion to Dismiss (dkt. no. 79), alleging that the USAO's decision to indict Mathur was the result of unconstitutional selective and vindictive prosecution.[1]  Specifically, Mathur alleges that the USAO selectively prosecuted Mathur, who is ethnically Indian and religiously Hindu, while at least nineteen other individuals belonging to different racial, ethnic, and religious groups and who were involved in similar activities were not prosecuted but rather permitted to pay civil fines.  Mathur also alleges that the USAO's decision to indict him after he refused its plea offer amounts to

_____

[1] Defendant's Motion to Dismiss is sealed pursuant to his request.   (Dkt. no. 54.)

1   vindictive prosecution.  Finally, Mathur requests that, if his Motion is denied, the Court

2   grant him an evidentiary hearing regarding his selective prosecution allegations.

3         The Magistrate Judge denied Mathur's Motion and his request for an evidentiary

4   hearing.  (Dkt. no. 95.)  Magistrate Judge Leen determined that much of Mathur's

5   allegations were based on mere "rumor, innuendo, and gossip," and that he did not

6   produce evidence sufficient to support his selective and vindictive prosecution claims.

7   Magistrate Judge Leen also held that Mathur's Motion and supporting evidence did not

8   satisfactorily demonstrate that Mathur was treated differently than similarly situated

9   persons belonging to a different race, ethnicity, or religion, and accordingly denied

10  Mathur's request for an evidentiary hearing on his selective prosecution claim.

11        Mathur then filed an Objection to the Magistrate Judge's R&R.  (Dkt. no. 101.)

12  Mathur objects that the R&R does not capture the "tone, tenor, or essence" of his

13  dispositive motion (dkt. no. 101 at 5).  He objects to the Magistrate Judge's denial of his

14  selective and vindictive prosecution claims as well as his request for an evidentiary

15  hearing.

16  **II.    MOTION TO SEAL**

17        In response to the government's emergency motion to seal Mathur's Objection,

18  the Court ordered a temporary sealing of the Objection pending a ruling on the merits.

19  Having reviewed the relevant briefs and exhibits relating to Defendant's Motion to

20  Dismiss and Motion to Seal, the R&R, Defendant's Objection and the government's

21  Motion to Seal (dkt. nos. 79, 80, 63, 80, 54, 64, 86, 78, 95, 101,104, 102 and 103), the

22  Court withdraws its temporary order and denies the government's Motion to Seal.

23        As noted, Mathur previously moved to seal his Motion to Dismiss.  (Dkt. no. 54.)

24  The Magistrate Judge granted his request, finding that compelling reasons exist to seal

25  the Motion to Dismiss because it "contains unsubstantiated rumor, gossip, and other

26  scurrilous allegations that may be used to gratify private spite, permit public scandal, and

27  circulate libelous statements."  (Dkt. no. 95 at 3.)  The parties have not sought

28  reconsideration of the Magistrate Judge's order to seal.  They have simply switched

1   positions.  The government now seeks to seal Mathur's Objection.  In opposing sealing

2   of the Motion to Dismiss, the government cited to its own regulations which require it to

3   take the position that the pleading not be sealed.  (Dkt. no. 64.)  Mathur now offers the

4   same regulations in opposing sealing.[2]

5       The court has inherent power to seal documents.  *United States v. Shyrock*, 342

6   F.3d 948, 983 (9th Cir. 2003).  The party seeking to seal bears the burden of overcoming

7   the "strong presumption in favor of access" by meeting the "compelling reasons"

8   standard. *Kamakana v. City and County of* Honolulu, 447 F.3d 1172, 1178 (9th Cir.

9   2006).  The sole basis of the government's argument for sealing is that the Motion to

10  Dismiss was sealed.  However, the Objection differs from the Motion to Dismiss in that

11  the Objection omits detailed allegations based on unsubstantiated rumors and

12  speculations that justify sealing the Motion.   Accordingly, the Court finds that the

13  government has failed to show that compelling reasons exist to seal the Objection.

14  **III.    MOTION TO DISMISS**

15      **A.    Legal Standard**

16      28 U.S.C. § 636(b)(1)(C) requires the Court to make a "de novo determination of

17  those portions of the report or specified proposed findings or recommendations to which

18  objection is made."  After conducting a de novo review, the Court may accept, reject, or

19  modify, in whole or in part, the findings or recommendations made by the Magistrate

20  Judge.  28 U.S.C. § 636(b)(1)(C); *see also* Local Rule IB 3-1.

21      **B.    Selective Prosecution**

22          **1.    Motion to Dismiss**

23      "A selective-prosecution claim is not a defense on the merits to the criminal

24  charge itself, but an independent assertion that the prosecutor has brought the charge

25  _____

26      [2] Mathur contends that because the Magistrate Judge's R&R was not sealed, he
    is forced to file his Objection without raising all of the issues in his Motion to Dismiss.
27  However, such a perceived handicap is self-imposed and could have been overcome
    with a request to file his Objection under seal as he did when he filed his Motion to
28  Dismiss.  Moreover, in considering the Objection, the Court has reviewed Defendant's
    Motion to Dismiss and related briefs and exhibits.

for reasons forbidden by the Constitution." *United States v. Armstrong*, 517 U.S. 456, 463 (1996). Such a claim "asks a court to exercise judicial power over a 'special province' of the Executive." *Id.* at 464. However, because the Attorney General and United States Attorneys have broad discretion to enforce criminal laws, there is a "presumption of regularity" that "supports their prosecutorial decisions, and in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties." *Id.* (quotation marks and citations omitted). In an ordinary case, "so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion." *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978).

However, "a prosecutor's discretion is subject to constitutional constraints." *Armstrong*, 517 U.S. at 464. "One of these constraints, imposed by the [Fifth Amendment], is that the decision whether to prosecute may not be based on an unjustifiable standard such as race, religion, or other arbitrary classification." *Id.* (quotation marks and citations omitted).

"In order to dispel the presumption that a prosecutor has not violated equal protection, a criminal defendant must present clear evidence to the contrary." *Armstrong*, 517 U.S. at 465 (quotation marks and citations omitted). "To establish a discriminatory effect in a race case, the claimant must show that similarly situated individuals of a different race were not prosecuted." *Id.*

To be similarly situated to the Defendant, the other persons must be "the same in all relevant aspects, except that the defendant" was prosecuted. *United States v. Aguilar*, 883 F.2d 662, 706 (9th Cir. 1989), *superseded by statute*, 8 U.S.C. § 1324, *as recognized in United States v. Gonzalez-Torres*, 273 F.3d 1181, 1186 (9th Cir. 2001). "If all other things are equal, the prosecution of only those persons exercising their constitutional rights gives rise to an inference of discrimination. But where the

///

5

1  comparison group has less in common with defendant, then factors other than the

2  protected expression may very well play a part in the prosecution." *Id.*

3     Much of Mathur's Motion consists of speculations and rumors regarding office

4  politics within the USAO, all of which is irrelevant to Mathur's allegations.  After sifting

5  through Mathur's extraneous allegations, only two claims contain any merit: (1) his

6  allegation that USAO Criminal Chief Marsh "took no criminal action against 17 [or more]

7  physicians who perpetrated direct frauds upon the Medicare/Medicaid programs" (dkt.

8  no. 101 at 8); and (2) that the USAO's plea offer demonstrates that it was selectively

9  targeting the Asian-American community in Clark County for prosecution under the Anti-

10  Kickback Act.[3]

11     Claim (1) above is unsupported by Mathur's evidence.  Mathur provides

12  numerous newspaper articles recounting how the Nevada USAO did not prosecute

13  certain individuals under the Anti-Kickback Act.[4]  However, Mathur does not demonstrate

14  that the individuals in those articles were similarly situated to him.  The articles merely

15  state that the therein-named individuals entered into civil fines of a certain amount for

16  allegedly violating the Anti-Kickback Act.  Prosecutorial discretion allows for a great deal

17  of variations in determining who to prosecute and why.  Without offering more

18  information concerning each individual case, Mathur cannot not establish that the

19  circumstances surrounding each of those parties' cases were similar to his.  In fact, the

20  information provided in the articles demonstrates that Mathur's case *differs* from at least

21  some of the other cases he cites to in two primary respects.  First, at least some of those

22  settlements were joint efforts between the USAO and the Department of Health and

23  _____

24  [3]Mathur also argues that his prosecution went against the Obama administration's
   policy of not prosecuting 42 U.S.C. § 1320a-7(b)(2)(A) violations.  Mathur cites to a *New*

25  *York Times* article stating that the Obama administration no longer plans on prosecuting
   kickbacks under the Anti-Kickback Act as evidence that the USAO prosecuted Mathur

26  despite an office-wide policy of non-prosecution.  Even were the article to support
   Mathur's contention, and it does not, "such factors as the . . . case's overall relationship

27  to the Government's overall enforcement plan are not readily susceptible to the kind of
   analysis the courts are competent to undertake."  *See Armstrong*, 517 U.S. at 465.

28     [4] These documents were filed under seal.

6

Human Services to pursue civil claims involving fraud against federal health care programs under the False Claims Act. (*See, e.g.*, dkt. no. 87 at 18, 19, 20.)[5] There is no evidence that Mathur's case was a part of that joint effort. Second, some of the cases Mathur cites to involved former Nevada Assistant Attorney General Brower and not current Nevada Assistant Attorney General Bogden. (Dkt. no. 87 at 23.)[6] Given that many of Mathur's allegations in his selective prosecution claim revolve around the alleged politics in the USAO under Bogden's leadership, persons investigated under Brower's tenure as Assistant Attorney General are not similarly situated to Mathur.

Further, Mathur fails to demonstrate that the parties in the newspaper articles uniformly belonged to different racial, ethnic, and/or religious groups than Mathur. The newspaper articles Mathur provides do not list the races, ethnicities, or religions of the individuals whom the USAO chose not to prosecute. The articles merely contain the physicians' names and a brief account of the agreement they reached with the government. (*See* dkt. no. 87.) None of this information relates to these physicians' race, ethnicity, or religion.[7]

Mathur also claims that that the USAO's plea offer demonstrates that it was selectively targeting the Asian-American community in Clark County for prosecution under the Anti-Kickback Act. Mathur claims that the USAO knew that Mathur's physician friends were predominately Asian American and that its plea offer – to have Mathur surreptitiously record conversations with these friends in hopes of discovering further illegal behavior – demonstrates that it was targeting these discrete minorities for prosecution. However, there is no evidence, let alone clear evidence, that the USAO

---

[5] These documents are filed under seal.

[6] This document is filed under seal.

[7] In light of this, it is unclear why Mathur believes this evidence supports his selective prosecution allegation. The most generous construction of his argument is that the last names of the more-favorably-treated physicians demonstrate that they are of a different race, religion, and/or ethnicity than Mathur. However, our national diversity coupled with the often quirky fashion in which persons obtain their last names make surnames poor proxies for race, ethnicity, and religion.

wanted Mathur to direct his secret conversations on behalf of the government to any specific group. *See Armstrong*, 517 U.S. 454. Rather, the USAO's offer was for Mathur to record conversations with others who may have accepted kickbacks.[8] These allegations do not support Mathur's selective prosecution charge.

### 2.    Request for an Evidentiary Hearing

Among other items, Mathur requests that the USAO produce a list of cases in which similarly situated individuals were considered for prosecution under 42 U.S.C. § 1320a-7(b)(2)(A) by the Nevada USAO. (Dkt. no. 79 at 37.) He also requests a plethora of evidence in the hopes of lending further support to his salacious but completely irrelevant statements about how the internal politics within the USAO relate to this case. (*See id.*)

Defendants requesting discovery in aid of a selective prosecution claim are held to a "rigorous standard." *Armstrong*, 517 U.S. at 468. A defendant must demonstrate a "credible showing of different treatment of similarly situated persons" before a Court will grant his discovery request. *Id.* at 470. This "required threshold . . . adequately balances the Government's interest in vigorous prosecution and the defendant's interest in avoiding selective prosecution." *Id.*

For the same reasons stated above in part (B)(1), Mathur fails to produce any evidence that the USAO treated him differently than similarly situated defendants of different racial, ethnic, or religious groups. Because Mathur makes no "credible showing" of differential treatment to support his request for an evidentiary hearing, the Court denies his request. *See Armstrong*, 517 U.S. at 470.

### C.    Vindictive Prosecution

A vindictive prosecution is "one in which the prosecutor seeks to punish the defendant for exercising a protected" right. *United States v. Donnell Jenkins*, 537 F.3d

---

[8] The Court has reviewed the email communications where the offer was made but because the email was filed under seal, the Court provides only a summary of the offer. Dkt. no. 63-1 at 11.

1    1, 3 (1st Cir. 2008).  Vindictive prosecution violates a defendant's Fifth Amendment right

2    to due process.  *Id.*  A defendant "may establish prosecutorial vindictiveness by

3    producing direct evidence of the prosecutor's punitive motivation towards" him.  *United*

4    *States v. Sharon Jenkins*, 504 F.3d 694, 699 (9th Cir. 2007).  "Alternatively, [the

5    defendant] is entitled to a presumption of vindictiveness" if he can demonstrate that the

6    charges were filed because he "exercised a statutory, procedural, or constitutional right

7    in circumstances that give rise to an appearance of vindictiveness."  *Id.*

8        If the defendant provides "[e]vidence indicating a realistic or reasonable likelihood

9    of vindictiveness[,] this give[s] rise to a presumption of vindictiveness on the

10   government's part."  *United States v. Garza-Juarez*, 992 F.2d 896, 906 (9th Cir. 1993)

11   (quotation marks and citation omitted; brackets in original).  "The burden then shifts to

12   the prosecution to show that independent reasons or intervening circumstances dispel

13   the appearance of vindictiveness and justify its decisions."  *United States v. Lopez*, 474

14   F.3d 1208, 1211 (9th Cir. 2007) (quotation marks and citations omitted).

15                  **1.    The Plea Negotiations and their Aftermath**

16       Mathur does not present direct evidence of the USAO's vindictive motive for

17   prosecuting him nor does he produce indirect evidence that the USAO filed charges

18   against him because he exercised a statutory or constitutional right.   The USAO

19   presented him with a plea offer and kept the offer open for a number of months.  (*See*

20   dkt. no. 87.)  When Mathur refused the offer, the USAO indicted him, which he was

21   informed would happen if he did not accept the offer.  There is nothing vindictive about

22   the USAO choosing to prosecute Mathur for allegedly violating a criminal statute.[9]   In

23   fact, "in the context of pretrial plea negotiations vindictiveness will not be presumed

24   simply from the fact that a more severe charge followed on, or even resulted from, the

25   defendant's exercise of a right[,]" or in this case, his refusal to accept a plea offer.   *See*

26   _____

27            [9] Mathur's other allegations regarding vindictive prosecution, which all revolve
     around his contentions that the USAO should have recused itself, are similarly
28   unsupported and without merit.

*United States v. Gamez-Orduno*, 235 F.3d 453, 462 (9th Cir. 2000).  "The reason that we do not presume vindictiveness in the pretrial plea bargaining situation flows from the courts' sanctioning of plea negotiations as a means of resolving criminal cases."  *Id.*

> [Courts] . . . have recognized that prosecutors will often, as a plea negotiation tactic, threaten increased charges during the course of plea negotiations, and later, if no guilty plea is forthcoming, make good on that threat.  Recognizing that such prosecutorial conduct is not meaningfully distinguishable from charging more strictly at the outset and then reducing the charges as a result of plea negotiations, the courts have concluded that threatening and then filing more severe charges as an outgrowth of plea negotiations does not violate due process.

*Id.* at 463.  The USAO simply followed through on what it told Mathur it would do if he refused to accept the plea offer.

### 2.    The Circumstances Surrounding Mathur's Arrest

Mathur further states that the USAO made representations that it would allow him to self-surrender, but instead sent the FBI to arrest him.  He argues that this amounts to vindictive prosecution.  The government claims that Mathur forfeited his right to self-surrender because he or his counsel had lied to the USAO regarding his whereabouts.[10] (Dkt. no. 63-1 at 29.)

Mathur does not cite to any law to support his contention that the USAO's method of arresting and indicting Mathur was vindictive.  Rather, the USAO had told Mathur that it would allow him to self-surrender, but because of Mathur's subsequent perceived misrepresentations, the USAO decided to send the FBI to arrest him.  There is nothing punitive about this course of action.  *See Sharon Jenkins*, 504 F.3d at 699.

### D.    Mathur's Request for Discovery Unrelated to his Motion to Dismiss

Mathur also claims that the R&R fails to address his request for discovery unrelated to his vindictive/selective prosecution allegations.  He requests the Grand Jury transcripts of his Indictment and unredacted copies of surveillance logs maintained by

---

[10] The parties disagree about representations made relating to a trip that Mathur had cancelled, which the USAO apparently construed to mean Mathur was available to continue plea negotiation, and this disagreement resulted in allegations of misrepresentation by the USAO.

the government during its investigation.  (Dkt. no. 101 at 11.)[11]   Mathur states that the above information is *Brady* material unrelated to his Motion but pertinent to his defense. However, Magistrate Judge Leen fully and adequately addressed Mathur's request for *Brady* materials in a previous Order addressing Mathur's motion for disclosure of Brady materials.  (Dkt. no. 58 at 2-4.)

## IV.   CONCLUSION

IT IS HEREBY ORDERED THAT the Report and Recommendation of United States Magistrate Judge Peggy Leen, dated June 8, 2012, is approved, adopted, and ratified by the Court in full.

IT IS FURTHER ORDERED THAT the government's motion to seal is DENIED.

ENTERED THIS 1st  day of August 2012.

UNITED STATES DISTRICT JUDGE

_____

[11] Mathur also states that the Magistrate Judge's R&R failed to address discovery of the following: (1) information pertaining to Mike Vaswani's status as a confidential informant for the government; (2) unredacted copies of a September 28, 2009, email between U.S. Attorney Bogden and Criminal Chief Marsh; (3) all videotaped depositions involving Bogden, Marshe, and Myhre pertaining to civil rights claims brought by USAO employees; (4) a list of cases in which individuals have been prosecuted under 42 U.S.C. § 1320a-7b(b)(2)(A) during Bogden's tenure as the Nevada Attorney General. However, these items are not *Brady* material and pertain to discovery for Mathur's claims in this Motion.  The R&R and this Order adequately address and reject Mathur's request for this material.